UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMIE T. WHITE o/b/o T.R.W.,

            Plaintiff,

      v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

            Defendant.
_____

DECISION & ORDER

17-CV-6367P

## PRELIMINARY STATEMENT

Plaintiff Jamie T. White ("White") brings this action on behalf of her minor son, T.R.W., pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Children's Supplemental Security Income Benefits ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 12). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and complies with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and White's motion for judgment on the pleadings is denied.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A child is disabled for the purpose of SSI if he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). When assessing whether a claimant is disabled, the ALJ must employ a three-step sequential analysis. *See* 20 C.F.R. § 416.924; *see also Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 386 (2d Cir. 2010). The three steps are:

(1) whether the child is engaged in substantial gainful activity;

(2) if not, whether the child has a medically determinable impairment or combination of impairments that is severe such that it causes more than minimal functional limitations; and

(3) if so, whether the child's impairments or combination of impairments meet, medically equal, or functionally equal a presumptively disabling condition listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings").

*See* 20 C.F.R. §§ 416.924(b)-(d).

In determining whether a child's impairments or combination of impairments meet, medically equal, or functionally equal one of the Listings, the ALJ must evaluate the child's functioning across the following six domains of functioning:

(1) acquiring and using information;

3

(2) attending and completing tasks;

(3) interacting and relating with others;

(4) moving about and manipulating objects;

(5) caring for oneself; and

(6) health and physical well-being.

*See id.* §§ 416.926a(b)(1)(i)-(vi). To be functionally equal, the impairment must result in a finding of "marked" limitations in two domains of functioning or a finding of "extreme" limitations in at least one domain of functioning. *See id.* at § 416.926a(a).

A "marked" limitation is one that is "'more than moderate' but 'less than extreme'" and that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(2)(i); *see also Spruill ex rel. J.T. v. Astrue*, 2013 WL 885739, *5 (W.D.N.Y. 2013) ("[a] marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the child's] ability to function independently, appropriately, effectively, and on a sustained basis") (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)). An "extreme" limitation is "more than marked" and one which "interferes very seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

## II. **The ALJ's Decision**

In her decision, the ALJ followed the required three-step analysis for evaluating childhood disability claims. (Tr. 19-33).[1] Under step one of the process, the ALJ found that

---

[1] References to page numbers in the Administrative Transcript (Docket # 7) utilize the internal Bates-stamped pagination assigned by the parties.

4

T.R.W. had not engaged in substantial gainful activity since May 31, 2013, the application date. (Tr. 22). At step two, the ALJ concluded that T.R.W. had the severe impairments of history of hairline fracture of the skull, profound loss of hearing in the right ear, anxiety, depression, and attention deficit hyperactivity disorder ("ADHD"). (*Id.*). At step three, the ALJ determined that T.R.W. did not have an impairment or combination of impairments that met or medically equaled one of the Listings. (*Id.*).

In addition, the ALJ concluded that T.R.W. did not have an impairment or combination of impairments that functionally equaled one of the Listings. (Tr. 22-32). In reaching this conclusion, the ALJ evaluated T.R.W.'s impairments across the six domains of functioning. (Tr. 27-32). Specifically, the ALJ concluded that T.R.W. suffered from less than marked limitations in the domains of acquiring and using information, attending and completing tasks, caring for himself, and health and physical well-being. (Tr. 28-32). The ALJ also concluded that T.R.W. had no limitations in the domains of interacting and relating to others, and moving about and manipulating objects. (Tr. 29-31). Accordingly, the ALJ found that T.R.W. is not disabled. (Tr. 32).

### III. White's Contentions

White contends that the ALJ's determination that her son is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 10-1, 13). Specifically, White's sole argument is that the ALJ erred when she gave "great weight" to all the questionnaires completed by T.R.W.'s teachers and school counselor in the record (the "Questionnaires"), but failed to explain why she rejected the "serious" and "very serious" problems assessed by those sources. (Docket ## 10-1 at 13-19; 13 at 1-4). In White's view, this

failure led to an improper finding that T.R.W. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and caring for oneself. (Docket # 10-1 at 18). Because these are the only functional domain findings challenged by White, the Court's analysis addresses only the functional domains of acquiring and using information, attending and completing tasks, and caring for oneself.

IV. **Analysis**

   A. **Acquiring and Using Information**

"In evaluating the level of impairment in 'acquiring and using information,' consideration must be given to how well the child acquires or learns information, and how well the child uses the information he has learned." *Spruill ex rel. J.T. v. Astrue*, 2013 WL 885739 at *6 (citing 20 C.F.R. § 416.926a(g)). The regulations provide that adolescents between the ages of twelve and eighteen – which was T.R.W.'s age range when the underlying application was filed – should continue to demonstrate what they have learned during academic assignments and be able to use what they have learned in daily living situations without assistance. 20 C.F.R. § 416.926a(g)(2)(v). In addition, they "should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations." *Id.* They should also be able to apply what they have learned in practical ways that will assist them to enter the workplace after finishing school. *Id.*

When evaluating a child's level of impairment, the ALJ should "consider all relevant evidence in determining a child's functioning, including information from the child's teachers." *Swan v. Astrue*, 2010 WL 3211049, *6 (W.D.N.Y. 2010) (citation omitted); *Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007) ("[t]he ALJ may also consider other opinions

about a claimant's disability from persons who are not deemed 'acceptable medical sources,' such as a therapist who is not licensed or certified psychologist"). Evidence from teachers or therapists "cannot establish the existence of a medically determinable impairment," but their opinions may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." Social Security Ruling 06-03P, 2006 WL 2329939, *2 (2006).

Social Security Ruling 06-03P recognizes that "[n]on-medical sources who have had contact with the individual in their professional capacity, such as teachers . . . , are also valuable sources of evidence for assessing impairment severity and functioning[;] [o]ften, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." *Id.*

In accordance with these rules, here, the ALJ afforded "great weight" to the Questionnaires completed by T.R.W.'s teachers Kathie Letter ("Letter"), Mary Webbing ("Webbing"), and Haley Schantz ("Schantz"), and his school counselor Matthew Guffey ("Guffey"), because they were "in the best position to evaluate [T.R.W.'s] day-to-day functioning." (Tr. 27). Each of these sources prepared a teacher questionnaire in either April or August 2015 related to the 2014-2015 school year – T.R.W.'s freshman year of high school.[2]

The Questionnaires directed the teachers to "compare [T.R.W.'s] functioning to that of same-aged children who do not have impairments." (Tr. 343, 442, 451, 460, 724). In

---

[2] White also states that a school counselor for T.R.W. completed a questionnaire on June 22, 2015, related to the 2013-2014 school year. (Docket # 10-1 at 15 (citing Tr. 343-50)). This appears to be a misstatement of the record. The record citation refers to an incomplete questionnaire completed by an unnamed counselor, which reflects assessments in only three of the six functional domains and contains no signature page. The ALJ indicated that Guffey completed it, presumably because Guffey was T.R.W.'s school counselor. (Tr. 26). A notation at the top left corner of the report also states "Jul 16 2013" (Tr. 343), which led the ALJ to conclude that the questionnaire was from July 2013 (Tr. 26). That notation makes it unlikely the report was from June 22, 2015, as White claims.

7

each of the six functional domains, the teachers ranked the severity of T.R.W.'s problems in various categories or skill areas from "slight" to "obvious" to "serious" to "very serious." The Questionnaires did not define those terms. The teachers also had the opportunity to provide comments for each domain of functioning based on their observations of T.R.W.

In the domain of "acquiring and using information," Letter, T.R.W.'s English teacher, opined that T.R.W. had no problems at all. (Tr. 443). Webbing, T.R.W.'s social studies teacher, marked that T.R.W. had a "serious" problem in two of the ten categories and one "very serious" problem. (Tr. 452). Webbing commented that T.R.W. "often" did not complete assignments, took "a long time, [needed one-on-one] help and constant check-ins to stay on task [and] pace," and could verbally communicate the correct response to questions, but had "trouble putting it into written words." (*Id.*).

Schantz, T.R.W.'s math teacher, indicated that T.R.W. did not have any "very serious" problems, but had three "serious" problems. (Tr. 461). She commented that T.R.W. had "trouble self-starting independent work," "often le[ft] assignments blank or unfinished," and "need[ed] a high level of support [and] prompting to complete work." (*Id.*). Guffey noted that T.R.W. had no "very serious" problems in this domain and had one "serious" problem. (Tr. 725). He indicated that T.R.W. had a problem following through with assignments and consistently taking advantage of after-school help opportunities. (*Id.*).

White contends that the ALJ erred when she failed to explain why she rejected the teachers' assessments of "very serious" and "serious" problems. The Court disagrees.

The "ALJ must set forth the essential considerations upon which the decision was based with sufficient specificity so as to enable the reviewing court to determine whether the disability determination was supported by substantial evidence." *Frye ex rel. A.O. v. Comm'r of*

8

*Soc. Sec.*, 2010 WL 6426346, *9 (N.D.N.Y. 2010). Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why [she] considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Lawrence W. v. Comm'r of Soc. Sec.*, 2018 WL 4509490, *7-8 (N.D.N.Y. 2018) (noting that ALJ's lack of explanation for deciding not to incorporate limitations from a source he afforded "great weight" is "not error where the reviewing court can determine the underlying rationale").

I find that the record evidence and the ALJ's determination as a whole permits this Court to "glean the rationale" of the ALJ's decision that T.R.W. has less than marked limitations in the domain of acquiring and using information. Therefore, the ALJ did not commit error by failing to explain why she found the teachers' assessments of "serious" or "very serious" problems in this domain insufficient to support a finding of "marked" or "extreme" limitations.

In her decision, the ALJ detailed the Questionnaires, and, in doing so, specifically acknowledged that several of T.R.W.'s teachers assessed him with "serious" and "very serious" problems in this domain. (Tr. 26-27). Those assessments are not necessarily inconsistent with the ALJ's conclusion that T.R.W.'s limitations were "less than marked."[3] *See Abukhader ex rel. I.K.A. v. Comm'r of Soc. Sec.*, 2013 WL 5882858, *2, *6 (S.D.N.Y. 2013) (ALJ's determination of less than marked limitation in domain of acquiring and using information was based upon

---

[3] White appears to argue that the teachers' assessments of "serious" or "very serious" problems in their questionnaires necessarily equate to "marked" or "extreme" limitations, based on the definitions of those limitations in the regulations. (Docket # 10-1 at 18 (citing 20 C.F.R. § 416.926a(e))). She provides no authority for this argument, however, aside from the wording of regulations, and several courts have rejected the same proposition. *See, e.g., Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 823 (11th Cir. 2015) ("the teacher questionnaire does not explain what distinguishes between slight, obvious, or serious problems or how these designations might correspond to 'less than marked,' 'marked,' or 'extreme' ratings as defined in the regulations"); *Spruill ex rel. J.T.*, 2013 WL 885739 at *8 ("[p]laintiff infers that a finding of a 'serious' problem in a particular skill area [on a teacher questionnaire] in a domain of functioning should be equated with a 'marked' limitation[;] [h]owever, [p]laintiff has not cited, and the [c]ourt has not found, any cases or other legal authority directly supporting this proposition"). I likewise reject the argument.

substantial evidence where teacher questionnaire indicated that plaintiff had problems ranging from "slight" to "very serious" in the activities associated with the domain); *Petrie ex rel. T.T. v. Colvin*, 2013 WL 1500360, *6 (N.D.N.Y. 2013) (ALJ properly concluded plaintiff suffered from less than marked limitations in domain of acquiring and using information where teacher questionnaire indicated that plaintiff suffered from "slight" to "very serious" problems performing activities associated with domain). This is particularly so where one of T.R.W.'s teachers, Letter, opined that T.R.W. had no problems in this domain. *See*, *e.g.*, *Smith v. Colvin*, 2015 WL 1119983, *17 (W.D.N.Y. 2015) (finding that ALJ's conclusion of less than marked limitations in one domain was not "necessarily inconsistent" with teacher's assessment of several "very serious" and "serious" problems, where another teacher opined that claimant did not have "serious" or "very serious" limitations in the same domain).

Moreover, it is evident that the ALJ relied upon different aspects of the Questionnaires, other school records, particularly the April 2014 psycho-educational evaluation completed by certified school psychologist Gretchen A. Bartosch ("Bartosch"), and medical evidence. Specifically, the ALJ acknowledged that T.R.W. had "cognitive difficulties." (Tr. 25). This was based on the August 26, 2013, consultative examinations performed by Drs. Rosenberg and Luna, to which the ALJ afforded "some weight." (Tr. 25, 641-45, 646-51). Dr. Rosenberg opined that T.R.W. had only "mild restriction[s] for activities that require[d] significant cognitive thought and intellectual ability." (Tr. 650). In Dr. Luna's opinion, T.R.W. had "moderate[] limit[ations] in his ability to learn in accordance to cognitive functioning" and, while those limitations "appear[ed] to be consistent with psychiatric problems," they did not appear "to be significant enough to interfere with [T.R.W.'s] ability to function on a daily basis."

(Tr. 644). Neither "mild" nor "moderate" limitations qualify as "marked" or "extreme" limitations, according to the regulations. *See* 20 C.F.R. § 416.926a(e).

In addition, the ALJ noted Bartosch's evaluation, the most recent psycho-educational evaluation in the record. (Tr. 24, 28, 417-27). That report showed that T.R.W. did well in his science class. (Tr. 418). T.R.W.'s then-science teacher reported that T.R.W.'s homework was "always done and [was] done adequately," that he "frequently" participated, was well organized, showed interest in the subject, and was a "role model" in that class. (*Id.*). Furthermore, Bartosch indicated, among other things, that T.R.W. had an average IQ and average to below average marks in his tests of achievement. (Tr. 28, 425-26).

Although the ALJ could have explained more fully her evaluation of the Questionnaires, her decision as a whole shows that she considered the relevant evidence, and that substantial evidence supports her conclusion that T.R.W.'s limitations in the domain of acquiring and using information were less than marked. *See Johnson ex rel. A.J. v. Astrue*, 2013 WL 1187436, *14 (S.D.N.Y. 2013) ("[i]f, as here, the ALJ's decision was based on substantial evidence, and correct legal principles were applied, this [c]ourt must affirm the Commissioner's final decision even if the record contains contrary evidence"); *Frye ex rel. A.O. v. Comm'r of Soc. Sec.*, 2010 WL 6426346 at *9 ("[t]he ALJ could have more clearly explained how he reconciled the seemingly mixed evidence regarding the extent of claimant's limitations in this domain[;] [h]owever, he properly referenced the evidence on both sides of the issue and marshaled substantial evidence supporting his conclusion that [the child's] limitations were less than marked").

B. **Attending and Completing Tasks**

"The domain of attending and completing tasks principally entails an assessment of the degree to which a child can 'focus and maintain . . . attention, and . . . begin, carry through, and finish . . . activities.'" *Spruill ex rel. J.T.*, 2013 WL 885739 at *9 (citing 20 C.F.R. § 416.926a(h)). The regulations provide that adolescents should be able to pay attention for longer presentations and discussions and maintain their concentration while reading text books. 20 C.F.R. § 416.926a(v). In addition, they should be able to independently plan and complete long-range academic projects and should be able to organize their materials and plan their time in order to complete school tasks and assignments. *Id.* They should also be able to maintain attention on a task for extended periods of time and not be unduly distracting to or distracted by their peers in a school or work setting. *Id.*

In this domain, Letter indicated that T.R.W. had "serious" problems in two of the thirteen categories and two "very serious" problems. (Tr. 444). Letter noted that T.R.W. had "difficulty committing his ideas to paper – partly because he wants to be sure everything [was] perfect before he writes" and that he had "not yet completed an essay on time for English class." (*Id.*). Webbing marked that T.R.W. had a "serious" problem in two areas and three "very serious" problems, and commented that he needed "many prompts to complete most tasks." (Tr. 453). Schantz also noted that T.R.W. had a "very serious" problem in three categories and one "serious" problem. (Tr. 462). She indicated that T.R.W. had "trouble completing tasks due to slow processing" and that he "need[ed] much prompting to finish assignments." (*Id.*). Guffey

noted that T.R.W. had no problems in this domain, except a "very serious problem" completing class or homework assignments. (Tr. 726).[4]

In essence, White challenges the ALJ's finding of less than marked limitations in this domain on the same basis as he challenged the ALJ's finding concerning the domain of acquiring and using information. Initially, as stated above, White has not demonstrated that the assessments contained in the Questionnaires are necessarily inconsistent with the ALJ's finding in this domain. *See Abukhader ex rel. I.K.A. v. Comm'r of Soc. Sec.*, 2013 WL 5882858 at *2, *6; *Petrie ex rel. T.T. v. Colvin*, 2013 WL 1500360 at *6.

In any event, I find that the ALJ's rationale for her determination in this domain can also be determined from the record and that she did not err by failing to explicitly address any conflict between the Questionnaires and her finding. Specifically, the ALJ took into consideration that T.R.W. "d[id] not do his homework or classwork as much as he should," that he "need[ed] a lot of prompting to complete tasks," and that he had trouble motivating himself to do tasks he did not wish to do. (Tr. 29). The ALJ acknowledged that some evidence suggested that T.R.W. suffered from ADHD, but that his treating pediatrician had not diagnosed him with that disease, and he was not taking medicine for it. (*Id.*). Yet, the ALJ also referenced T.R.W.'s family counseling records from 2015, which reflected that in April 2015 T.R.W. was "consciously exert[ing] more effort in school and with chores" and was showing some improvement and in June 2015 indicated that T.R.W. was doing his homework and staying after school "often for extra help." (Tr. 29, 664, 721). The ALJ accurately noted that T.R.W. had

---

[4] This assessment reflects a significant improvement from the July 2013 teacher questionnaire, presumably completed by Guffey. In 2013, Guffey opined that T.R.W. had a "very serious problem" in five of the categories. (Tr. 344).

"intact attention and concentration and intact memory" during his consultative examinations. (Tr. 29, 643, 647).

Even if the ALJ could have more fully explained her evaluation of the Questionnaires and "how [she] reconciled the seemingly mixed evidence regarding the extent of [T.R.W.'s] limitations in this domain," she "properly referenced the evidence on both sides of the issue" and her decision that T.R.W. suffers from less than marked limitations in the domain of attending and completing tasks is supported by substantial evidence. *See Frye ex rel. A.O.*, 2010 WL 6426346 at \*9; *see also Grant v. Colvin*, 2015 WL 3746707, \*6-7 (W.D.N.Y. 2015) (ALJ considered claimant's limited attention span, but also noted that she tested negative for ADHD, had no history of mental health treatment, displayed "adequate attention and concentration" during her consultative examinations, could bring herself "back to task" at school, and that excessive absences and being unprepared for classes negatively impacted her results in school; "[w]hile there is some evidence of [claimant's] distractibility, which the ALJ properly considered, the balance of the record shows that the ALJ relied on substantial evidence when he found less than marked limitation in [the domain of attending and completing tasks]"); *Watson ex rel. K.L.W. v. Astrue*, 2008 WL 3200240, \*3 (W.D.N.Y. 2008) ("[w]hile it is true that some school evaluations report that KLW has difficulty focusing on her work and is easily distracted, the evidence also demonstrates that she is able to be redirected to the task[;] [a]lthough she required twice the time to complete assigned tasks, she had minimal problems switching between activities without disruption, and was capable of completing work correctly without careless mistakes, and working without distraction to herself and others[;] . . . [the court] find[s] that this evidence supports the ALJ's conclusion that KLW does not have a marked impairment in the domain of attending to and completing tasks").

Review of the Questionnaires shows that all of T.R.W.'s teachers had similar concerns regarding T.R.W.'s functional ability in certain of the thirteen skill areas in this domain, including his ability to focus long enough to complete assigned activities or tasks, organize his own things or school materials, complete class/homework assignments, and work at a reasonable pace/finish tasks on time. (Tr. 444, 453, 462, 726). As discussed above, the ALJ pointed to record evidence suggesting that T.R.W. was working to improve and was showing some improvement in these areas. (Tr. 29, 664, 721). Moreover, even if T.R.W. could be said to suffer from a "marked" limitation in this domain, that would still be insufficient to result in a finding of disability. Specifically, White has not shown that the ALJ committed error in finding less than marked or no limitations in the remaining domains. *See* 20 C.F.R. § 416.926a(a); *see also Lindner ex rel. N.M.R. v. Colvin*, 2015 WL 5156877, *7 (W.D.N.Y. 2015) ("even if N.M.R. suffered a marked limitation in this domain, it would not change the outcome of the ALJ's decision because she did not suffer marked limitations in any of the remaining domains, and the evidence does not support a finding of an extreme limitation in th[is] domain"[;] "[t]hus, to the extent that the ALJ erred in finding no limitations in this domain, that error was harmless"); *LaRock ex rel. M.K. v. Astrue*, 2011 WL 1882292, *10 (N.D.N.Y.) ("even if [consultative psychiatrist's] opinion of a marked limitation in this domain had been accepted, it would not have resulted in a finding of disability because the ALJ found no other marked limitations"[;] "[t]hus, the ALJ's failure to offer a specific explanation as to why this particular finding of [consultative psychiatrist] was rejected[] at most amounts to harmless error"), *report and recommendation adopted by*, 2011 WL 1883045 (N.D.N.Y. 2011).

C.      **Caring for Oneself**

The caring for oneself domain evaluates "how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s] [his or her] physical and emotional wants and needs met in appropriate ways; . . . cope[s] with stress and changes in [the] environment; and whether [the child] take[s] care of [his or her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). Adolescents "should feel more independent from others and should be increasingly independent in all of [their] day-to-day activities." *Id.* at § 416.926a(k)(2)(v). Examples of limited functioning in this domain include limitations in dressing or bathing oneself, engaging in self-injurious behavior, having disturbances in eating or sleeping patterns, and failing to spontaneously pursue enjoyable activities or interests. *Id.* at § 416.926a(k)(3).

The ALJ found that T.R.W. has less than marked limitations in this domain. (Tr. 31). In so finding, the ALJ acknowledged that some of the Questionnaires reflect that T.R.W. did not ask for help when he should and needed to be prompted by teachers to complete tasks. (*Id.*). Specifically, Letter indicated that T.R.W. had a "serious" problem knowing when to ask for help, but otherwise had no problems. (Tr. 447). Schantz also noted that T.R.W. had a "serious" problem knowing when to ask for help, but had no other "serious" or "very serious" problems. (Tr. 465). Guffey indicated that T.R.W. had a "serious" problem using appropriate coping skills to meet the daily demands of the school environment, but otherwise had no problems, and commented that T.R.W. "tend[ed] to avoid academic difficulties." (Tr. 729). Webbing opined that T.R.W. had no problems at all in this domain. (Tr. 456).

The ALJ noted that T.R.W. did not always remember to brush his teeth and that he sometimes did not change clothes after gym class. (Tr. 31, 64, 67-68). None of T.R.W.'s

16

teachers indicated that he had any problems taking care of his personal hygiene or caring for his physical needs. (Tr. 447, 456, 465, 729). Moreover, Dr. Luna observed in her child psychiatric evaluation that T.R.W. was dressed "neat[ly] and casual[ly]" and his personal hygiene was "well groomed." (Tr. 642). It is also evident that the ALJ considered the facts that T.R.W. pursued activities that he enjoyed, such as playing video games, and did not engage in self-injurious behavior. (Tr. 31).

As with the other domains, I find that the ALJ's discussion of the record evidence permits this Court to review her rationale for finding that T.R.W. has less than marked limitations in the domain of self-care, and that her rationale was reasonable and supported by substantial evidence. *See Shatraw ex rel. K.C.Y. v. Astrue*, 2012 WL 589667, *3-4 (N.D.N.Y. 2012) (rejecting claimant's argument that ALJ failed to adequately explain why teachers' assessments of "serious" and "very serious" problems in the domain of self-care did not result in a finding of marked or extreme limitation; "[w]hile the ALJ could undoubtedly have articulated his reasoning more thoroughly, his finding of less than marked limitation in this domain is nevertheless supported by substantial evidence"); *Lindner ex rel. N.M.R. v. Colvin*, 2015 WL 5156877 at *6 (ALJ committed no error in failing to explicitly discuss his reasons for the functional domain findings; "[p]rior to his discussion of each discrete domain, the ALJ conducted a thorough review of the record evidence"; "the ALJ's discussion of the evidence in the context of the entire decision allows a subsequent reviewer to follow the ALJ's reasoning") (alterations and citations omitted).

## CONCLUSION

This Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **GRANTED**. White's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and White's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
March 26, 2019